# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| JESSIE M. CASELLA,                                    )<br>                                                                  )<br>          **Plaintiff,**                               )<br>                                                                  )<br>**v.**                                                           )<br>                                                                  )<br>**TOWN OF CULPEPER, OFFICER MATT**  )<br>**BORDERS, in his personal capacity, POLICE**  )<br>**CHIEF SCOTT H. BARLOW, in his personal**  )<br>**capacity, UNNAMED TOWN OF CULPEPER**  )<br>**POLICE OFFICERS 1-100, in their personal**  )<br>**capacity,**                                                  )<br>                                                                  )<br>          **Defendants.**                           )<br>_____)| **Civil Action No. 3:2009cv00019** |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' FRCP 12(b)(6) MOTION TO DISMISS

## TABLE OF CONTENTS

**Statement of Facts**…………………………………………………………….. 2

**Argument**………………………………………………………………… 4

### Summary of Argument in Opposition

    I.   **Casella's Claims are not Based on a Vicarious Right.**

    II.  **Defendants Hinge Their Motion to Dismiss on a Controverted Set of Implied Facts and Should be Denied on this Basis Alone.**

    III.**The Complaint States Valid Causes Even if the Initial Search and Viewing of the Images were Legal.**

    IV.**The Search of the Cellphone was Invalid.**

    V.  **Count I States a Claim Upon Which Relief Can Be Granted and Plaintiff's basis for standing to assert her federal claims is not vitiated in light of the viability of her federal claims.**

    VI.**Count II States a Claim Upon Which Relief Can Be Granted Against the Town and the Unnamed Officers.**

    VII.    **Count III States a Claim Upon Which Relief Can Be Granted Against the Town and Chief Scott H. Barlow.**

**VIII.**    <u>**Punitive Damages are Warranted.**</u>

**IX.** <u>Conclusion</u>

<u>**Statement of Facts**</u>

On or about February 1, 2008, Jessie Casella lent her boyfriend Nathan Newhard (Newhard), a resident of Culpeper, Virginia, her cellphone for his personal use when talking with her.  Plaintiff did not then or later give boyfriend Newhard or anyone else permission to share any contents of her cellphone.  Plaintiff did not consent to and extracted a promise from Newhard that he would not show or transmit the pictures to any third party.  On March 30, 2008, an unnamed Town of Culpeper Police Officers arrested Newhard on the charges of driving while intoxicated and possessing an unlicensed firearm.  The officer performed a warrantless search of Newhard's person including the cellphone belonging to Casella. An unnamed Town of Culpeper Officer then proceeded to inventory the cellphone and viewed pictures in the camera mode of the cellphone. Visuals of Plaintiff's naked body were stored in the picture files which were never intended for public consumption or viewing.  The photo files were private, confidential, intimate images of Casella's and Newhard's nude images.

When the cellphone was collected and came into the hands of Defendant Matt Borders (Borders), sergeant of the Town of Culpeper Police, Borders immediately contacted certain other Town of Culpeper Police Officers, specifically so they could view the private images of Plaintiff's nude body. Without permission or consent from Plaintiff Casella, the owner of the cellphone, or arrestee Newhard, Sergeant Borders then utilized the Town of Culpeper radio system to discuss with several other Town employees including Culpeper County's Sheriff Deputies and their friends, of the pictures resulting from Newhard's arrest.  Upon information and belief, certain Town of Culpepper employees who did not participate in any manner in Newhard's March 30 arrest, also traveled to the Town of Culpeper Police Headquarters to view Plaintiff's photographs.

An unnamed County of Culpeper Sheriff's Deputy eventually advised Plaintiff Casella that Sergeant Borders and several other officers viewed and were continuing to view the contents of the cellphone seized during the warrantless search and arrest of Nathan Newhard on March 30.  Plaintiff Casella became extremely anguished when she learned that individuals at the police department had

seen and possibly transmitted the explicit photographs to unknown others outside the Department.

Arrestee Newhard was subsequently called into County of Culpepper school administrative offices to be grilled about the incident, and was terminated from his employment in the school system; the investigation of Neward by school officials was prompted by an Unnamed Culpeper Police Officer who raised prurient details regarding the photographs of Ms. Casella's nude body with a school official. Days following Newhard's arrest, Defendant Borders lured Ms. Casella to his residence with the suggestion that she was to shoe several of his horses (Casella being a well-known local farrior). It was on that date that Plaintiff learned from the first time that Sergeant Borders was one of the officers who had participated in Newhard's arrest and may have caused his firing. Plaintiff's acquaintances brought up details about the naked photographs with Plaintiff in the weeks following the arrest, which caused her further anxiety and fear about widespread transmission, ridicule by the small, close-knit community of Culpepper.  As a result, Plaintiff suffered chronic sleeplessness, nightmares, weight fluctuations and depression; after losing his job with the school system, Casella and Newhard ended their long-standing relationship, partly as a result of the stress place on her relationship by the arrest and its aftermath and Plaintiff's now chronic health problems arising from her anxiety and fear of social situations, for which she sought medical treatment on May 30, 2008 at Commonwealth Medical Clinic in Culpeper. Plaintiff was prescribed an anti-depressant and ordered her to seek psychiatric counseling. Ms. Casella later prepared a citizen's complaint against Defendant Borders for the circulation of the contents of her cellphone, which was subsequently formally submitted to Captain Ricky Pinkson of the Town of Culpeper Police Department.  Plaintiff received no response, written nor otherwise, to her written complaint to the Department against Defendant Borders. On June 16, 2008, Plaintiff sent a follow-up letter to the Culpeper Police Department informing them of the lack of response to her citizen complaint and of the subsequent actions of the Department's employees. On June 24, 2008, Plaintiff received only a cursory letter from Chief Barlow, informing her that her citizen complaint was sustained.

## ARGUMENT

### I.  Plaintiff Claims are not Based on Vicarious Rights.

Casella has standing to assert privacy rights under the Fourth Amendment based upon her ownership of

the cellphone searched and its sensitive contents.[1] Assuming, *arguendo*, that Officer Borders' search of the cellphone was proper (See Part IV below), and that Borders' initial viewing of the sensitive images was within the scope of this search, the subsequent viewings by other officers and members of the public not tasked with this search were a violation of Casella's privacy rights grounded in her ownership of the phone and the images.  Newhard's and Plaintiff's conduct is consistent with a bailment of, not the transfer of title to, the cellphone.  Bailment law as applied in Virginia establishes a central fact question, as none of the evidence supplied will support the idea that Newhard's possession was adverse to the ownership interests of Plaintiff Casella, the legal title holder; it is not alleged that Newhard did any act inconsistent with the arrangement that he would use the borrowed cellphone to contact girlfriend Casella; a hallmark of a typical bailment situation is that an owner who allows another person to use the item retains ownership and the right to reclaim possession at will; while the bailee may have an expectation of privacy in the borrowed object, that privacy interest is commonly subordinate to the owner's right to his property and right to reclaim possession at any time. See <u>Hardy v. Com.</u>17 Va.App. 677 (Va.App. 1994); <u>Commonwealth v. Southeastern Iron Corporation</u> 142 Va. 107 (Va. 1925)(in a bailment the bailee has mere possession, not title or ownership; bailments are by agreement and may be formal or informal. <u>American Reliance Ins. Co. v. Mitchell</u> 238 Va. 543 (Va. 1989), citing <u>K-B Corp. v. Gallagher</u>, 218 Va. 381, 384 (1977) (bailment defined as the legitimate possession of property by one who is not the owner, arising from a delivery of the chattel by the bailor and its acceptance by the bailee; the term may imply a loose, informal arrangement or a friendly gesture for a specific purpose, the bailor never relinquishes possession or control.)  Here, Plaintiff's boyfriend had at best temporary possession and Plaintiff-bailor Casella retained ownership rights in the item lent to her boyfriend so that she could freely contact him.  At no point had Casella abandoned any of her property interest in the cellphone or, for that matter, any of its private contents.  Her payment of the cellular bill, the ability to secure the

---

1 Factors in determining standing to assert a Fourth Amendment privacy right include (1) ownership of items to be searched, (2) possession or control of area searched or items seized, (3) historical use of property or item, (4) ability to regulate access, (5) existence or non-existence of subjective anticipation of privacy, (6) objective reasonableness of expectation of privacy considering specific facts of case, and (7) totality of circumstances surrounding search. U.S.C.A. Const.Amend. 4. See <u>U.S. v. Jeffers</u> 342 U.S. 48 (U.S. 1951), cited by <u>U. S. v. Salvucci</u> 448 U.S. 83 (U.S.Mass. 1980) (legal ownership of the seized good was sufficient to confer Fourth Amendment "standing; <u>U.S. v. Karo</u> 468 U.S. 705 (U.S. 1984) (Fourth Amendment protects the privacy interest in the location of personal property not exposed to public view); <u>U.S. v. Smith</u>, 2009 WL 1162897 (W.D.Va. 2009)(For Fourth Amendment purposes, defendant had a reasonable expectation of privacy in a locked trailer located in an open field on property belonging to him); <u>U.S. v. Quiroz</u> 57 F.Supp.2d 805 D.Minn.,1999; <u>U.S. v. Gomez-Vega</u> 519 F.Supp.2d 241(D.Puerto Rico 2007).

cellphone's return at will (the understanding between Casella and Newhard) and the fact that bailment of the phone was for the bailee's benefit.   Plaintiff asserts that if the cellphone had belonged to Newhard, Casella would still have a legitimate privacy interest in the photos. Casella's situation is distinguishable from the facts and holding in Seldon v. State 151 Md.App. 204 (Md.App. 2003) a Fourth Amendment ruling highlighting that "of obvious importance" in determining if a bailor assumes the risk that a bailee would consent to a search is "the extent to which the bailor made efforts to secure, even as against the bailee, the privacy of his effects." Id. at 223 citing 3 W. LAFAVE, SEARCH AND SEIZURE §§ 8.6(a)(3d ed.1996).

> Where possession of the car was given on the understanding that the bailee would subject it to general use, driving it about for his own purposes, then the bailee may give effective consent to a search of those portions of the car which he could be expected to make use of. If, for example, the owner hands over both the ignition key and trunk key, then the bailee may consent to a search of the trunk, for, as noted in United States v. Eldridge, "access to the trunk is a normal incident to the use of an automobile." But if the bailment of the car is for a special and limited purpose, then that purpose must be taken into account in assessing the extent of risk assumed by the bailor.

Here, the storing of pictures in her personal cellphone is not equivalent to vicarious consent to the Defendants' search since Plaintiff Casella had absolutely no intention of agreeing, or providing public access, to the uploading of these photographs of her naked body or consenting to their publication, for any reason, under any circumstances.   Contrary to the Defendant's Motion, Nonarrestee Casella was not suspected of a crime and is not in any manner premising any of her claims on Arrestee Newhard's expectation of privacy.  Defendants thus cite not a single case to support the notion that because Plaintiff's property interest lies in ownership rather than possession, her standing is somehow negated. In reality, Plaintiff did not abandon her property interest at any point and could have re-appropriated the cellphone from Newhard at any time she wished during their relationship. She had an expectation of privacy in her own property which was directly violated by Defendants' mishandling of that property without Casella's consent.

Again, Plaintiff does not hinge her case on the validity or invalidity of the initial viewing by Borders during the search of the phone.  It was the act of dissemination of the nude photos to the other parties that violated Casella's privacy rights.  See <u>Silver v. Primero Reorganized School District No.</u> 2, 619 F.Supp.2d 1074 (D.Colo. 2007); this Circuit has also held in <u>In re Thomas</u> 254 B.R. 879 (D.S.C. 1999), that a fiancé and eventual husband of a party's former girlfriend could sue to recover for the party's alleged intentional infliction of emotional distress by mailing to the fiancé photographs of the girlfriend engaged in sexually explicit acts; the award of $300,000.00 in actual damages was appropriate to compensate the fiancé for his severe emotional distress; a punitive award in amount of $125,000.00 was also warranted.[2]

In addition, the law cited by Movants cites no authority to show that possession, dominion or control, but ownership and whether the person has a legitimate privacy interest in the item of personal property searched, seized and misused; of the two cases cited in the brief for Defendants' vicariousness argument, neither assists the movants in meeting the standard for dismissal, as each are distinguishable from the circumstances presented at bar.  The reference to <u>Rakas v. Illinois</u> 439 U.S. 128 (U.S.Ill.1978) is plainly misleading since the petitioner in that case was seeking to appeal an order denying suppression of evidence seized in an automobile in which the Petitioners-Defendants were passengers. In stark contrast to the <u>Rakas</u> petitioners, Plaintiff Casella is first and foremost asserting a property interest in the item searched and an ownership interest in the property seized and searched; unlike the <u>Rakas</u>

---

[2] In other states, see, for instance, <u>American Guarantee and Liability Ins. Co. v. 1906 Co.</u>, 273 F.3d 605 (C.A.5.Miss. 2001)(Under state law, complaints by models who were surreptitiously videotaped in a photography studio dressing room stated claims against the photographer for invasion of privacy and extreme and outrageous conduct, and against the photographer's employer and employer's chief executive officer for the negligent failure to protect business invitees from foreseeable intentional torts, the negligent hiring of employee, and the negligent entrustment of employee with equipment susceptible to voyeuristic uses.); see also <u>Dietemann v. Time, Inc.</u>, 449 F.2d 245 (C.A.9.Cal. 1971)(Under California law, a cause of action for invasion of privacy was established on proof that defendant's employees, by subterfuge, photographed him in his home and electronically transmitted to third persons without his consent as result of which he suffered emotional distress; fact that such acts were done for the purpose of gathering material for a magazine story did not insulate the defendant from liability.) U.S.C.A.Const. Amend. 1.)

petitioners, she had a legitimate expectation of privacy in the property she owned, entitling her to challenge the misuse of the item search once the fruits were placed in the custody of the police.[3]   Here, Casella never in any way abandoned her ownership of images of her own nude body stored in her own cellphone, so the Town's citing of the rule as to the non-vicariousness of Fourth Amendment rights is both irrelevant and serves to distract the court's attention from the fact that Casella was not a subject of the search or within the scope of the arrest.   Defendants' authorities improperly urge the court to weigh cases where the arrestee's post-search, post-arrest or post-conviction effort to vicariously assert the Fourth Amendment rights of another on their own behalf vis-à-vis search, arrest or conviction is the issue before the court[4].   Plaintiff Casella is a third-party whose personal privacy rights have been violated.   Thus, none of the ostensible "vicariousness" cites in Defendants' memo address the issue before this Court: Casella's non-possessory ownership rights and expectation of privacy in her personal property.   Defendants further cite no case addressing violation of a Nonarrestee's nonvicarious legitimate privacy interest vis-à-vis a bailment of the Nonarrestee's property for the Arrestee-Bailee's benefit.   In

---

[3] While Rakas recognized that the question of whether an individual has a legitimate expectation of privacy ought not be controlled by arcane distinctions developed in property law, 439 U.S. at 149-50 n.17, the Court proceeded to clarify that "by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the legitimate privacy interests protected by that Amendment." Id. at 143-44 n.12. Indeed, the Rakas court explains, "One of the main rights attaching to property is the right to exclude others … and one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. Id.  More recently in Pike v. Gallagher 829 F.Supp. 1254 (D.N.M. 1993) the question before the Court was not whether state created property rights are protected under substantive due process, but whether the Plaintiff's interest in continued employment was the type of interest the "ancient institution of property" existed to protect from being "arbitrarily undermined." Id.

[4] U.S. v. Hardin 539 F.3d 404 (C.A.6 Tenn. 2008)("The common law thus recognized, as have our recent decisions, that rights such as those conferred by the Fourth Amendment are personal in nature, and cannot bestow vicarious protection on those who do not have a reasonable expectation of privacy in the place to be searched. The issue here, however, is not whether the subject of an arrest warrant can object to the absence of a search warrant when he is apprehended in another person's home, but rather whether the residents of that home can complain of the search. Because the authorities relied on by the Government focus on the former question without addressing the latter, we find their usefulness limited. **Indeed, if anything, the little guidance that can be gleaned from common-law authorities undercuts the Government's position.  Hardin, at 434** Because the arrest warrant for Lyons addressed only the former interest, the search of [Steagald]'s home was no more reasonable from [Steagald]'s perspective than it would have been if conducted in the absence of any warrant. Since warrantless searches of a home are impermissible absent consent or exigent circumstances, we conclude that the instant search violated the Fourth Amendment. ... For the reasons discussed above, we REVERSE the district court's denial of Hardin's motion to suppress, VACATE Hardin's conviction, and REMAND the case for further proceedings consistent with this opinion."); see Jamieson By and Through Jamieson v. Shaw 772 F.2d 1205 (C.A.5 Miss.1985)(Jamieson challenges not only the arrest of Gammons without probable cause, but also the seizure of her person which, she alleges, was unreasonable by virtue of the excessive force employed to accomplish it. The former, as the district court correctly assumed, is an assertion by Jamieson of another's rights and cannot stand, **but the latter is a proper assertion of her own Fourth Amendment right to be free from the "unreasonable" application of force when she is "seized."** The alleged lack of probable cause stands as one of many factors bearing on the reasonableness inquiry outlined above. The amendment bearing Jamieson's Fourth Amendment challenge should therefore be allowed.)

contrast, the Rakas petitioners, asserted neither a property nor a possessory interest in the automobile searched nor an interest in the property seized, and failed to show that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the vehicle in which they were merely passengers, thus they were not entitled to challenge the search of those areas.[5]   In addition, in Rawlings v. Kentucky 448 U.S. 98 (U.S.Ky. 1980) (Memo in Support, p. 3) the petitioner claimed ownership of certain drugs that were in a purse owned by a female acquaintance did not entitle petitioner to challenge the legality of a search of the purse. U.S.C.A.Const. Amend. 4. These facts have little or nothing to do with the facts presented at bar; by analogy, it would be the owner of the purse in Rawlings would be asserting the privacy claim; Rawlings also recognizes that legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest; while property ownership is a factor to be considered in determining whether an individual's Fourth Amendment rights have been violated, possession of a seized good may not be used as a substitute for a factual finding that the owner had a legitimate expectation of privacy in the area searched. [6] Thus, assuming, *arguendo*, that the search of the cellphone was validly a part of Newhard's arrest, and that the initial viewing by Officer Borders of the nude images was a valid part of that valid search, Defendants' subsequent handling of the Casella's property was a direct (not vicarious) privacy violation.   Defendants' vicariousness argument thus does not remotely meet the standard for dismissal and fails to withstand scrutiny.

---

[5] Although the prosecutor argued during the robbery prosecution in that case that the defendants lacked the standing to challenge a search of the vehicle in which they were riding because they did not own such automobile or the rifle and shells contained therein, those defendants did not contest the factual predicates of ownership, but chose to simply argue that they were not required to prove ownership in order to object to the search; the Supreme Court, in reviewing the lower court's refusal to suppress the evidence obtained during the search declined to order a remand of the case to determine ownership of the seized objects. U.S.C.A.Const. Amend. 4.  At bar, ownership of Plaintiff Casella's cellphone is undisputed and is reflected herein in Exhibit #1**.**

[6] Id. contrary to Defendants' brief, Rawlings says that legal possession of a seized good is not a proxy for determining whether the owner had a Fourth Amendment interest, for it does not invariably represent the protected Fourth Amendment interest. Thus Defendants' brief mistakenly relies on the idea that Casella voluntarily "handed possession over" to arrestee Newhard and predictably cites no case for the "dominion and control" test it would have the court apply. The fact that Casella lent the phone to Newhard's before he was arrested does nothing to alter the nature of Plaintiff's *own* Fourth Amendment rights, which are personal to her. [Memo in Support, p. 3]

## II. Defendants Hinge Their Motion to Dismiss on a Controverted Set of Implied Facts and Should be Denied on this Basis Alone.

The cellphone in Newhard's temporary possession at all times was Casella's personal property; Casella retained her ownership and had no reason to relinquish her property interest at any point prior to, or following, Newhard's arrest. Defendants' motion, at minimum, introduces a question of fact when it hinges the argument for dismissal entirely upon the assumption that the phone was gifted to Newhard on February 1, 2008. On this basis alone, Defendant would have the court dismiss multiple Counts in the Amended Complaint due to the general non-vicariousness of Fourth Amendment rights -- **notwithstanding** that Plaintiff is not claiming any vicarious rights -- and **notwithstanding** that Defendant cites no authority whatsoever for the "dominion and control" standard posited in its brief (See Memo in Support, p. 2). Defendants' argument in reality rests wholly upon an implied interpretation of the facts which is unsupported by the present record, namely, that Casella "gave" Newhard her cellphone two months prior to his arrest; however the implied "fact" of gifting Newhard with the cellphone rather than lending it to contact her is nothing if not disputed: Casella herself purchased the subject cellphone, was in the habit of loaning it to Newhard so that the couple could contact each other, was at all times regularly paid and was responsible for paying the monthly phone bill, and could have demanded return of the phone at any time. At the same time, there is nothing in the factual record to suggest any reason Plaintiff would have stopped paying her phone bill or done anything to abandon her ownership of the cellphone. The record also contains no evidence that the private photos of Plaintiff's naked body were ever willingly made accessible for public consumption – that is, prior to Defendants' misuse while the images were in police custody. (Plaintiff's counsel has attached a copy of evidence reflecting that at the time of the arrest, Casella continued to be sole owner with full property rights and privacy interest in the cellular telephone in question, see **Exhibit 1**, contradicting Defendant's argument in its Memo in Support.)

Movants have thus alleged facts directly contradictory to facts in the record, and insofar as the Motion to Dismiss is premised upon events not remotely established by the evidence and fatally hinges on controverted facts, a denial of dismissal is proper on this basis alone.  In light of the factual contest introduced by the movants by keying in on underlying disputed events, Defendants should be precluded from a grant of dismissal based on the very argument that triggers the fact issue. By introducing the idea that Casella gave up ownership of the phone, Defendant has gone outside the pleading. When "matters outside the pleading are presented to and not excluded by the court, the 12(b)(6) motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Laughlin v. Metropolitan Washington Airports Authority 149 F.3d 253, 261 (C.A.4 VA. 1998). The standard for granting a summary judgment motion is "that there be no genuine issue of material fact" Anderson v. Liberty Lobby, Inc. 477 U.S. 242 (1986)

### III. The Search of the Phone was not Proper.

The Defendant's citing of U.S. v. Murphy 552 F.3d 405 (C.A.4 Va. 2009) does not support Defendants contention that the initial search and inventory of Casella's personal phone when arresting Newhard was valid, since the finding that a cellphone was on motorist Murphy's person at the time of his arrest so as to permit seizure of phone as incident to his arrest did not rise to level of clear error, does not somehow validate any search of any cellphone on any arrestee's person, under any and all circumstances.  Quite distinct from the search in Murphy, the court will also note that no cognizable emergency exception applied to Defendant's search of Plaintiff Casella's phone during Mr. Newhard's arrest.  Although Mr. Newhard was charged with driving while intoxicated and possession of an unregistered firearm, there was no legitimate need for preservation of any evidence to justify the officers' warrantless retrieval of nude photographs from girlfriend Casella's cellphone; that Defendants here do not cite a rationale for retrieving this information other than the ostensible need to search for weapons of escape and the concealment or destruction of evidence.  Contrary to Defendant's argument, the decision in Murphy in no way stands for the proposition that the cellphone search, inventory of its

contents and repetitive uploading of Plaintiff's naked pictures would not constitute an invasion of privacy leading to a violation of constitutional rights.

Finally, Defendant's argument is even further off point in that arrestee Newhard did not offer Plaintiff Casella's cellphone for identification purposes in the manner of defendant motorist Murphy (testimony elicited by defendant Murphy's own counsel indicated that he had shown the phone to the officer and displayed for the officer how the phone could be used to obtain the names of specific individuals who could corroborate his identity.) U.S.C.A. Const.Amend. 4.  Id. Thus even assuming, *arguendo*, that the particular inventory of the phone's contents was properly a part of Newhard's arrest and that the initial viewing of the nude images were fruits of a permissible search, the reproduction, dissemination and repetitive accessing of the Plaintiff's naked images once they were in police custody, at the specific prompting of Officer Borders for the amusement of Officer Borders' intimates, the Culpeper Police Department and numerous others outside the Department, nevertheless constituted a **direct**, *not a vicarious*, violation of Plaintiff's legitimate privacy interest in her personal property and its contents.  In essence, Defendants' diversionary tactic of asserting that Plaintiff's claims should be dismissed based on a party's lack of a vicarious expectation of privacy are irrelevant, particularly where the claims in question are grounded in Casella's (Newhard's) property rights in the cellphone and its contents.

Further, Defendant's citing of Chimel v. California 395 U.S. 752 (U.S.Cal. 1969)(Memo in Support, p. 4)  ignores intervening adjudication of the issue; i.e., a state trooper's search of defendant's cellphone was not valid as a search incident to the defendant's arrest in U.S. v. Quintana 594 F.Supp.2d 1291 (M.D.Fla. 2009).  Quintana also cites to Arizona v. Gant, --- U.S. ----, 128 S.Ct. 1443 (2008), a case concerning the search of an automobile incident to an arrest, the Supreme Court granted certiorari on the following question: Does the Fourth Amendment require law enforcement officers to demonstrate a threat to their safety or a need to preserve evidence related to the crime of arrest in order to justify a warrantless vehicular search incident to arrest conducted after the vehicle's recent occupants have been

arrested and secured? During oral argument, Justice Stevens commented that "the interest in preserving evidence really should only be present when there is probable cause to believe there is some evidence." Justice Scalia opined that "if you're going to use [the preservation-of-evidence] rationale you have to link the reason for the arrest with the likelihood that there would be any evidence found in the car that would support the arrest." Id. at 22. Scalia seemed skeptical that law enforcement could arrest someone and then "rummage around for evidence of a different crime." Id.; see also Thornton v. United States, 541 U.S. 615, 632 (2004) (reasoning that an evidentiary search of an automobile incident to an arrest should be allowed only where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle").  Plaintiff engaged in no unlawful activity that could be defined as exceeding the penumbra of confidentiality and where, in addition, the private data implicates significant aspects of personal identity, personal image, appearance, professional reputation and private sexuality.

Information is constitutionally protected when a legitimate expectation exists that it will remain confidential while in the state's possession, and the legitimacy of an individual's expectations depends, at least in part, upon the intimate or otherwise personal nature of the material which the state possesses. Patrick v. City of Overland Park, Kan. 937 F.Supp. 1491(D.Kan. 1996).  See Sheets v. Salt Lake County 45 F.3d 1383 (C.A.10 Utah 1995).

## IV. Counts I States a Claim Upon Which Relief Can Be Granted and Plaintiff's Basis for Standing is not Vitiated in Light of the Viability of Her Federal Claims.

Defendant's motion fails to show that Counts I through III of the Amended Complaint do not state a claim upon which relief may be granted.  Under Virginia law, the intentional infliction of emotional distress (hereinafter "IIED") requires that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality; (3) the wrongdoer's conduct caused the emotional distress; and (4) the

emotional distress was severe. <u>Baird ex rel. Baird v. Rose</u> 192 F.3d 462 (C.A.4 Va. 1999)[7] Under this test, Defendants' conduct was intentional, reckless, rose to the level of being completely outrageous and extreme in degree, and the emotional distress suffered by Plaintiff as a result of the alleged violations went beyond a reasonable individual's endurance.

Here, in light of Defendants' conduct vis-à-vis the fruits of a third party's arrest, Count I of the Amended Complaint both states a valid claim for IIED under state law and meets the standard for the recovery of damages. In addition, Virginia courts consider the tort of "outrage" and the tort of IIED one and the same, and the question of the outrageousness of Defendants' conduct should be one for the jury. <u>Paroline v. Unisys Corp.</u>, 879 F.2d 100 (4th Cir.1989) (court discussed the level of outrageousness required to maintain a claim of IIED, quoting the Restatement (Second) of Torts: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"[8])

Defendants' arguments are also baseless and do not justify dismissal in that Plaintiff Casella alleges that the conduct in question targeted her specifically and that the officers knew that their misuse of the images would result in her emotional distress; Defendant's motion does not explain who else might have been effected by the officer's publication of the naked images – Defendants' brief is

---

[7] (Allegations that defendant, in her capacity as teacher and during a class to which plaintiff public school student was assigned, intentionally attempted to humiliate student, a child, knowing that she was suffering from clinical depression, sufficiently alleged facts so outrageous as to exceed the bounds of decent society, for the purposes of stating a claim for intentional infliction of emotional distress under Virginia law.); the second element of the Virginia cause of action for IIED, that the conduct be outrageous, is aimed at limiting frivolous suits and avoiding litigation in situations where only bad manners and mere hurt feelings are involved. Restatement (Second) of Torts § 46 comment. Restatement (Second) of Torts § 46 comments. Id.

[8] Restatement (Second) of Torts § 46 comment d. See <u>Thomas</u>, supra.

1

unpersuasive to show that an unknown, unidentified person lacking any dignity, human emotion or

2

reputation capable of being damaged was the true target of the Defendant Officers.

3

4

Plaintiff has standing to bring the federal claim over which this Court has original jurisdiction

5

making the exercise of Supplemental Jurisdiction over Plaintiff's state law claim proper under 28 U.S.C.

6

§ 1367(c)(3).

7

Casella's claim also meets the "facial plausibility" test in Ashcroft v. Iqbal 129 S.Ct. 1937 (U.S.

8

2009) in that the facts as pled allow the court to draw a reasonable inference that Defendants are liable

9

for the misconduct alleged. A court considering a motion to dismiss may begin by identifying

10

allegations that, because they are mere conclusions, are not entitled to the assumption of truth, however

11

Paragraph 52 of the Amended Complaint is not a conclusion, it is an allegation, i.e., it is not possible to

12

be any more specific as to do so would be an attempt to prove a negative; Plaintiff reasonably asserts

13

that there was a *lack* of a policy. Asserting an inadequate internal policy would require allegations as to

14

specifically why the designated policy was inadequate, thus the only useful amendment available to

15

Plaintiff to plead would have been something to the effect that "if such a policy X had been in place,

16

then Sergeant Borders would have known not to reproduce and disseminate Casella's images for the

17

prurient pleasure of countless unknown others." When there are well-pleaded factual allegations in a

18

Complaint, the court should assume their veracity and then determine whether they plausibly give rise to

19

an entitlement to relief. Iqbal at 1948 - 1951.

20

Finally, Defendant Officers were not carrying out a governmental function by showing the

21

photographs; they were obviously acting in a private nature and thus, under the Niese rule (infra), the

22

Town is vicariously liable for its employees' tortious and criminal acts. The Town may not assert

23

sovereign immunity doctrine in order to disavow its vicarious liability for such intentional acts as

24

described above, as engaged in by its employees. Vicarious municipal liability is established where the

25

officers' act in showing the photo was not done in a "government character" but in the exercise of "some

26

private or proprietary character."[9] Thus even if sovereign immunity doctrine were to apply, the Town

27

28

---

[9] See Niese v. City of Alexandria 264 Va. 230 (Va. 2002) (where the Court refused to retreat from the rule articulated in Burson v. City of Bristol, 176 Va. 53, 63 (1940)("In this State, we have long determined the liability or non-liability of a city for acts committed by it

has waived any immunity through its conduct.  Count I therefore should not be dismissed as Police Chief Barlow is vicariously liable for the actions of his employees, and specific actions by Chief Barlow and the unnamed officers are alleged to have resulted in Plaintiff Casella's injuries.  Plaintiff's injuries are severe.  At times she believed that every town police officer was attempting to sexually seduce her. She refused to drive at night, believing that the police would stop her.  She was given a speeding ticket by police officers in another county and concluded that it was part of a conspiracy to harass her. Plaintiff Casella was diagnosed with a severe stress disorder and for the first time in her life ordered to take prescription drugs to cope with the stress.  Her longstanding relationship with Newhard bore the brunt of the stress and they have since separated.  Eventually the stress became so great that she moved to another county.  As of this writing, Plaintiff Casella still has weekly counseling sessions as a result of this incident.

### V.  Count II of the Amended Complaint States a Claim Upon Which Relief Can Be Granted Against the Town and the Unnamed Officers.

As to II a), b) and c) of Defendant's Memo in Support, Plaintiff Casella's Amended Complaint clearly asserts that her privacy rights were violated and sets forth her legitimate expectation of privacy in her cellphone. (Amended Complaint, p. 9, paras. 42-6).   The Amended Complaint further cites in detail the Town's custom and policy that directly resulted in the privacy violation.  (Amended Complaint, p. 11, para. 53).   The Fourth Circuit found a policy or custom as pled by plaintiff in <u>Clipper v. Takoma Park, Md.</u> 876 F.2d 17 (C.A.4 Md. 1989), where a citizen who had been arrested in bank robbery case sued the municipality and the bank for the deprivation of his civil rights. The U.S. District Court entered judgment after a jury returned a verdict for the plaintiff; the Circuit Judge on the City's appeal held: (1) that the police officers lacked probable cause to arrest the plaintiff in connection with the bank robbery, and (2) that the evidence supported the conclusion that the arrest was based on a policy of the City.

---

according to whether the act was done in its governmental or proprietary character. If the act be done in carrying out a governmental function, the city is not liable; if it be done in the exercise of some power of a private, proprietary or ministerial nature, the city is liable.").

Notwithstanding the holding in the widely-cited <u>Spell v. McDaniel</u> 824 F.2d 1380 (C.A.4 N.C. 1987), the Fourth Circuit enunciated a clarified the proper pleading of "policy and custom" in cases alleging municipal liability.[10]

Plaintiff Casella's first allegations of municipal liability relate to the Town's alleged failure to have a policy in place to process the potentially private and confidential personal property of third parties seized during arrests from the person of arrestees based on probable cause, a failure which led in Plaintiff's case to the dissemination of materials highly damaging to her mental state, reputation and business relationships, the covering up of her complaint, and condoning of misconduct by the Town's personnel.  Casella alleges that the responsible policymakers of the municipality had actual or constructive knowledge of the misconduct, but failed, as a matter of specific intent or deliberate indifference, to stop or correct the practices.[11] "Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, [or] manifest opportunities and official duty of responsible policymakers to be informed." Id. at 1391. To establish that a custom of misconduct proximately caused a particular violation, a plaintiff must show that the failure to correct the known practices made the specific violation "'almost bound to happen, sooner or later.'" [12]

Casella's Complaint duly points to a Town custom and policy that contributed to the Constitutional violation in that the policy failed to properly enforce privacy rights of third-party non-arrestees; Count III alleges that the officers, acting pursuant to said deficient Town custom, deprived Casella of her federal Constitutional right to privacy under the Fourth Amendment, displaying deliberate indifference to such rights; this Count further alleges the Town of Culpepper developed and maintained a policy of deficient training of its police force and asserts a claim for supervisory liability against Chief Borders and other unnamed personnel. (Amended Complaint, Paras. 52-3)

Independent of her "failure to train" claim Plaintiff Casella has pled that the Town of Culpepper maintained a custom of allowing arresting officers to make free and reckless use of third party personal

---

[10] Specifically, that municipal policies include formal and informal decisions made by municipal officials authorized to make final decisions. Id. at 1385-86. Municipal customs are established by persistent, widespread practices of municipal officials, whether specifically authorized or not, which are so permanent and well settled as to have the force of law. Id. at 1386. Such practices are attributable to a municipality when they become so frequent in occurrence that actual or constructive knowledge is imputed. Id. at 1387.
[11] Id. at 1390-91.
[12] Id.

property in their custody post-arrest. Casella develops this argument in her complaint and in this Response, specifically to preclude a grant of dismissal to the Town on that issue.

The complete and total denial of relevant discovery that would result if any of the above Counts of the Amended Complaint were dismissed would be unjust and would only lead to an appeal of the dismissal order, because without concrete evidence of the municipal policy alleged by Casella as existing or lacking independent of the police officers' misconduct, there is no possible way for Plaintiff to establish at this summary stage if the Town is at fault, since to infer the existence of a Town policy from isolated incidents of misconduct by low-level officers may not be sufficient to hold the Town liable on the basis of that policy, and might amount to permitting the strict brand of *respondeat superior* liability rejected by the Virginia appellate court.

The court would be tying Plaintiff's hands in order to let the Town off the hook.  Meanwhile, even if a municipal policy is not "itself unconstitutional", municipal liability may still be imposed under the theories of deficient training policy or condoned custom or usage,[13] and Casella asserts that both theories of recovery are applicable here. In addition, Casella's points to a sufficiently close causal link between such a known but uncorrected custom or usage and a specific violation in that the occurrence of the specific violation here was made reasonably probable (likely to occur) by permitting continuation of the custom.

As with Culpepper's deficient training policy, Plaintiff is alleges that the failure to correct known practices by the Town of Culpepper was such as to make the specific privacy violation that occurred "almost bound to happen, sooner or later, rather than merely likely to happen in the long run.  It was the policy, custom and/or practice of the Town of Culpepper and the Culpepper Police Department to inadequately supervise, train, discipline and control its Police Officers, including Officer Borders, thereby failing to adequately discourage constitutional violations on by its employees.

Further discovery will bring to light that the Town and the Department did not require appropriate in-service training, retraining or disciplining of Officers or prospective Officers whom the Defendants knew or had reason to know had engaged in misconduct, misappropriation of third party personal items

---

[13] Spell, supra, at 18-25.

and violation of the privacy of third parties suspected of no crime and unrelated to the subject arrests.

Dismissing the claims at this stage would thus be highly premature because Casella sufficiently

identifies and details specific policies and acts taken that pertain to Chief Borders and other Officers,

which allegedly have proximately caused her claimed injury.  The Town's motion to dismiss should on

this basis be denied, and Plaintiff permitted to proceed with her claims as stated in her Amended

Complaint and discovery which go to the reasonableness of the challenged actions by Town employees.

Any limitation upon such discovery would have the effect of concealing the very policies, customs and

training practices of the Town of Culpepper which Plaintiff alleges caused the constitutional violation,

policies impacting the rights of third parties who are not under suspicion of having committed any crime

and which embody deliberate indifference on the part of the Town.

As to the Town's vicarious liability for the Officers' acts of indiscriminately and wantonly

disseminating private photos seized in a third party arrest, such conduct cannot by any measure be

deemed a discretionary function of the police (see discussion of vicarious liability as set forth in II.

above.)  Defendant Officers were not carrying out a governmental function by showing the photographs;

they were obviously acting in a private nature and thus, under the Niese rule (supra), the Town is

vicariously liable for its employees' tortious and criminal acts.  The Town may not assert sovereign

immunity doctrine in order to disavow its vicarious liability for such intentional acts as described above,

as engaged in by its employees.  Vicarious municipal liability is established where the officers' act in

showing the photo was not done in a "government character" but in the exercise of "some private or

proprietary character."  [14]

Count I therefore should not be dismissed as Police Chief Barlow is vicariously liable for the

actions of his employees, and specific actions by Chief Barlow himself are alleged to have resulted in

---

[14] See Niese v. City of Alexandria 264 Va. 230 (Va. 2002) (where the Court refused to retreat from the rule articulated in Burson v. City of Bristol, 176 Va. 53, 63 (1940)("In this State, we have long determined the liability or non-liability of a city for acts committed by it according to whether the act was done in its governmental or proprietary character. If the act be done in carrying out a governmental function, the city is not liable; if it be done in the exercise of some power of a private, proprietary or ministerial nature, the city is liable."). Thus even if sovereign immunity doctrine were to apply, the Town has waived any immunity through its conduct.  A municipality does not enjoy the defense of qualified immunity and may not rely on the good faith of its officers as a defense. Owen v. City of Independence, 445 U.S. 622 (1980); see Coleman v. McHenry 445 U.S. 622 (U.S.Mo. 1980) ("Qualified immunity is not available where public official knew or should have known that his actions would violate constitutional rights of plaintiff.").

Plaintiff Casella' injuries.  The same count may not be dismissed against the Unnamed Town of Culpeper Police Officers.

Finally, Count II should not be dismissed as to the Unnamed Officers.

**VI. Count III States a Claim Upon Which Relief Can Be Granted Against the Town and Chief Scott H. Barlow.**

Count III, based on the Town's and Chief Barlow's liability for failure to train may not be dismissed on the basis of Defendants' entitlement to qualified immunity.  Plaintiff pleads facts in its Amended Complaint that are sufficient to establish that Culpepper implemented a policy or custom of "deliberate indifference" resulting in the alleged constitutional violation. The Town can be held vicariously liable for the actions of its employees under Niese, supra. [15] The Amended Complaint refers to the deliberate indifference exhibited by the Town and Borders as employers towards third parties whose personal items in Town custody as a result of arrests.  The Amended Complaint asserts how the failure to train by the Town and Chief Barlow proximately led to the injuries claimed here by Plaintiff, thereby incorporating sufficient factual allegations to show that specific actions taken by the Department and its employees were unlawful and that they knew or should have known that the conduct would violate another's constitutional right. [16]

**VIII.        Punitive Damages are Warranted.**

Plaintiff Casella is entitled to punitive damages vis-à-vis her Constitutional and state law claims. despite Defendant's contention that "Even if the accessing and viewing of the pictures does constitute an invasion of privacy and a violation of Plaintiff's constitutional rights, these actions do not support any

---

[15] See Pike, supra. (Individual officers were not entitled to qualified immunity on Fourth Amendment claims of deputy sheriff who brought § 1983 action based on drug test which was administered without her consent; deputy's Fourth Amendment right was clearly established at time of test, and no reasonable officer could have believed that the recommended search of the deputy was lawful. U.S.C.A. Const.Amend. 4.)
[16] Botway v. Carlson 474 F.Supp. 836 (D.C.Va. 1979).

award of punitive damages" (Memo in Support, p. 11). The common-law standard of "malice" generally required under Virginia tort law to support an award of punitive damages is more than met by the facts and law set forth in the Amended Complaint. It is well established that the purpose of punitive damages is not so much to compensate the plaintiff but to punish the wrongdoer and to warn others, and such damages may be recovered where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. [17]

Beyond being both tortious and potentially criminal, Defendants' mishandling of the fruits of Newhard's arrest was knowing, calculated, and deliberately heedless of Police Department rules, third party property and constitutional rights and any semblance of institutional decorum on the part of a law enforcement agency entrusted with the public's confidence to uphold the laws of the state. Such aggravating factors merit the Court's consideration, as Plaintiff will be able to prove at trial, by clear and convincing evidence, that Defendants' actions were taken willfully, intentionally, and with actual malice.

As to Plaintiff's claims as asserted against the Town, the Virginia Supreme Court has held that in order for an employer to be liable for punitive damages for conduct committed by its employee, the employer must have previously authorized or subsequently ratified the employee's conduct. [18]Plaintiff Casella is alleging at bar that the Town of Culpeper both subsequently ratified and authorized the officers' conduct after the fact. Ms. Casella's communications to the Department were deliberately ignored even after she disclosed the facts to the Department and the Town's deliberate inaction and cover-up vis-à-vis the numerous regular staff members who participated in the post-arrest mishandling

---

[17] <u>Banks v. Mario Industries of Virginia, Inc.</u> 274 Va. 438 (Va. 2007).
[18] <u>Hogg v. Plant</u>, 145 Va. 175, 179-180 (1926).

of Plaintiff's photographs, constitutes implicit ratification of their conduct by the Town's failure to act, and exemplary recovery is therefore available as to Plaintiff's claims premised on vicarious liability.

Since Defendants have demonstrated the requisite Malice and the Town and Chief Borders, acting in the role of employer, subsequently ratified Defendants' willful conduct, Plaintiff's claim for punitive damages should be extended to Defendants Town of Culpeper and Chief Borders.  Beyond asserting an adequate basis for an exemplary award for Defendants' privacy violation, Plaintiff states sufficient facts to support an independent award of compensatory and exemplary damages for the intentional infliction of emotional distress, damage to reputation and damage to Plaintiff's existing and prospective business relationships; to what extent the conduct alleged justifies the recovery of punitive damages for emotional distress, humiliation, suffering, and damage to Plaintiff's reputation and relationships cannot be properly resolved on a motion to dismiss, particularly one premised on controverted facts. Accordingly, Defendants' motion should be denied as to each of counts I through III of the Amended Complaint.

### IX. Conclusion

For the above stated reasons, Counts I through III of Plaintiff's Amended Complaint state viable claims for which relief may be granted.

WHEREFORE, Defendants' Motion to Dismiss the Amended Complaint should be denied.

Respectfully submitted,


**JESSIE CASELLA**
**By Counsel**

**s/Emmett F. Robinson**
Virginia Bar Number:  41847
Attorney for Plaintiff
Law Offices of E. F. Robinson, PLLC
The Lake Ridge Law Center
1712 Financial Loop
Lake Ridge, Virginia 22192
Telephone (703) 970-2080
Fax:  (703) 940-9189
Email:  erobinson@erobinsonlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT on August 18, 2009, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following:

Jennifer Lee Parrish, Esq.
Parrish, Houck & Snead, PLC
702 Kenmore Avenue, Suite 100
Fredericksburg, VA 22401-7166
Counsel for Defendants Town of Culpeper. Chief Barlow and Police Officers 1-100


Richard H. Milnor, Esq.
Zinka, Milnor, Carter & Inigo, Ltd
414 Park Street
Charlottesville, VA 22901
Counsel for Defendant Borders


/s/ Emmett F. Robinson,